(No. 23170.—

THE BROTHERHOOD OF LOCOMOTIVE FIREMEN AND ENGINE-
MEN *et al.* Appellees, *vs.* THE MOBILE AND OHIO RAIL-
ROAD COMPANY *et al.* Appellants.

*Opinion filed December 19, 1935.*

LANSDEN & LANSDEN, RUFUS CREEKMORE, and L. R.
STEWART, (CARL FOX, of counsel,) for appellants.

OTTO KERNER, Attorney General, IRVIN ROOKS, HOW-
ARD C. KNOTTS, and LEE A. FREEMAN, for appellees.

Mr. CHIEF JUSTICE STONE delivered the opinion of the
court:

This appeal brings for review a judgment order of the
circuit court of *Alexander* county affirming an order of the
Illinois Commerce Commission which required the appel-

lants to restore and maintain switch-lamps on all switches located on the main track of the St. Louis division of the Mobile and Ohio Railroad Company in this State. The property of the railroad company is being operated by appellant Ernest E. Norris, appointed by the United States District Court as receiver, who removed the switch-lights as a matter of economy in the operation of the road. The complaint before the commission was that the removal of the switch-lamps endangered the safety of employees operating the trains and passengers traveling thereon during hours of darkness. A joint answer was filed by the railroad and the receiver denying any such danger, and setting out that despite strict economy in the operation of the road during receivership the income was insufficient to meet bare operating expenses. The answer alleged that the operating deficit for 1932 was more than $500,000; that no local night trains were operated over the railroad and none of the through trains pass or meet in Illinois except the north and south-bound passenger trains, which meet in a protected district. It is also alleged in the answer that the switch-lamps afforded no additional protection to the operation of the train, while the cost of maintenance of such lights on the St. Louis division amounts to more than $3000 per year, and that an order requiring their restoration and maintenance would impose an unreasonable burden and expense upon the operation of the road.

The questions before the commission were whether the removal of the switch-lamps endangered the safety of the employees operating the trains and the traveling public, and whether, in view of the financial difficulties of the road, an order requiring their restoration and maintenance would place an unreasonable burden of expense upon the receiver.

The St. Louis division of the railroad consists of 151 miles of single main-line track, with switch-tracks at various points. The track extends through a rugged, hilly ter-

ritory and has many curves, some of which are through cuts, the walls of which shut off the view of switches as they are approached. There are also long, steep grades. The evidence shows that four fast freight and two through passenger trains are operated over the line each night. The passenger trains are scheduled to pass in a protected district. Occasionally a local train behind in its schedule operates over the tracks after dark. In July, 1932, the receiver, without any application to or authorization from the Commerce Commission, ordered some ninety-one main-track switch-lights removed.

On hearing before an examiner for the commission two witnesses testified for the appellees. Both are experienced railroad men, though neither had operated trains over this particular railroad and neither was accustomed to operating trains at night over railroads where main-road switch-lights were not used. After describing the location of the switches and surrounding conditions, they testified that such switch-lights are used generally on all railroads to indicate to trainmen, during darkness, the position of the switches—that is, whether the main track is clear for travel or the switches are so set that the train will take the siding. They testified that in the absence of switch-lights there is no way by which the engineer or fireman can ascertain the position of a switch at night until too late to avoid trouble. Over objection these witnesses were permitted to testify that in their opinion it is essential to the safety of employees and passengers that main-line switches be equipped with switch-lamps, and that the removal of such lamps renders the operation of trains at night unsafe and endangers the employees and the traveling public, particularly in stormy and foggy weather, resulting in a nerve strain upon such employees.

The chief engineer of the railroad and the assistant superintendent of its St. Louis division testified for the appellants, describing the location and physical conditions

surrounding certain switches on the division. Their testimony also was that, due to surrounding physical conditions, certain of the switch-lamps cannot be seen by the engine crew in approaching the switches at a distance greater than from 700 to 1000 feet, and that, traveling at the rate of speed usually maintained, neither passenger nor freight trains could be stopped before reaching the switch, though the speed of such trains would be materially lessened in case a switch ahead was open. They also testified that it is practically impossible to keep all switch-lamps burning at all times, as they are at times tampered with, lenses are broken and the lights extinguished either through vandalism or different causes; that the rules of the railroad require employees to leave switches in their proper position, with the switch-points so placed as to leave the main line open, and that all main-line switches are required to be left locked. It was their opinion that if the employees do their prescribed duty the switches will be in proper alignment and it is as safe to operate trains without as with lights. They also testified that switches may be, and sometimes are, tampered with and left in a partly open position, in which case the switch-lights, if in use at such point, would be thrown out of normal direction, indicating a dangerous condition, and that if such a condition existed or there was no light, standard rules require the engineer to reduce speed or stop to ascertain the cause of such condition. The evidence also showed that the transportation department of the railroad had a rule, numbered 1234, requiring, when fixed signals are observed, that the train approach them at such rate of speed as to enable a stop within the distance at which their indication can be distinguished, and in case the train crew are unable to make out the indication of the signal, the train is to be stopped before reaching the signal and a fireman sent ahead to ascertain the indication and be advised thereof before proceeding. Appellants' witnesses also testified that they have

never known an engineer to slow down when approaching a switch without a light burning thereon, and that since removing the switch-lamps there have been no accidents on this division caused by reason of their discontinuance. The appellants' evidence also was that the cost of maintenance of each lamp is approximately three dollars per month.

H. B. Strawhun, railroad inspector for the Illinois Commerce Commission, testified that he made an inspection trip over this division with one of the witnesses for the appellants and others. He also testified that he had worked for the appellant railroad as a brakeman and switchman over this division from 1917 until the fall of 1930; that his experience on that division was that the engineer usually made an application of his air-brakes coming around curves, down-grade or approaching switches, and when he saw the switch-lights would release the brake, and that the engineer and fireman would call the position and color of the switch at night. He gave instances of where switches had been left open and but for the showing of the red switch-light the train on which he was working would have run onto the siding and caused an accident. He testified that in his opinion switch-lights are an element of safety and relieve the strain on anyone riding the engine.

The Commerce Commission found as facts that prior to the receivership the railroad had been equipped with switch-lights; that the receiver removed the lights from the main-track switches at various points along the railroad; that by reason of their removal, enginemen, firemen and other trainmen operating the trains are unable to determine the position of the switches; that the absence of definite information as to the position of the main-track switches caused a considerable feeling of uncertainty and insecurity on the part of those operating the engines, which appeared to so re-act upon their mental condition as to materially affect their health and safety as well as the safety of the public traveling on the railroad, and that this feeling of un-

certainty may tend eventually to break down the morale of the employees. The commission also found that the practice of maintaining switch-lights on main-track switches is one of long standing and almost universal with other railroads operating in Illinois; that switch-lights on the main-track switches, under normal conditions, give positive information as to the position of such switches at night and give a feeling of security to engineers and firemen operating trains under such conditions. It also found that in view of the particular care required and importance of the duties performed by engineers and firemen on this railroad it does not appear unreasonable to require respondents to provide and maintain switch-lamps on the main-track switches, and that the respondents should therefore be required, within a reasonable time, to replace, and thereafter maintain, such switch-lights. The commission ordered the appellants to restore the lights within thirty days and to maintain them, and ordered the receiver to report the date when the lights had been installed, within five days after such installation. The commission retained jurisdiction over the respondents and the subject matter.

The circuit court found that the order of the commission was in accordance with the law; that it was supported by the substantial weight of the evidence; that it contained sufficient specific findings of fact upon the principal issues, and that the lights were illegally removed and were essential for the safety of the employees and the traveling public. The court affirmed the order of the commission.

The points urged by the appellants are: (1) That the commission failed to make sufficiently specific findings of fact on the principal issues; (2) that its order is not supported by competent and substantial evidence; and (3) that there is a fatal variance between the allegations of the complaint and the proof. The appellees, on the other hand, urge that the record sustains the order of the

commission and the circuit court, and that as the appellants illegally and without authority removed the safety switch-lamps from the main line, they cannot now defend their action upon the ground of economy in operation of the road.

It is settled in this State that the regulation of service by utilities is under the control of the Commerce Commission. (*Chicago North Shore and Milwaukee Railroad Co.* v. *City of Chicago,* 331 Ill. 360.) Section 36 of the Public Utilities act (Ill. State Bar Stat. 1935, chap. 111*a*, par. 51,) provides that no changes shall be made by a public utility in any rule or practice affecting its service or in any facility except after thirty days' notice to the commission and to the public. Section 32 imposes the following requirements: "Every public utility shall furnish, provide and maintain such service instrumentalities, equipment and facilities as shall promote the safety, health, comfort and convenience of its patrons, employees, and public and as shall be in all respects adequate, efficient, just and reasonable." By section 50 of the act it is provided that whenever a change or improvement in any equipment, apparatus or facilities ought reasonably be made to promote the security or convenience of its employees or the public or in any way to secure adequate service, the commission may order such change after a hearing. The operation of a railroad by a receiver appointed in the United States District Court shall be according to the requirements of the valid laws of the State in which said property will be situated, the same as the owner or possessor would be bound to do if in possession thereof. (*Erb* v. *Moraisch,* 177 U. S. 584, 44 L. ed. 897; Judicial Code, sec. 65; 36 Stats. at Large, 1104.) . It is clear that the removal of the switch-lamps in the case before us was without authority and in violation of applicable statutes. Such violation the appellants seek by their answer to justify by reason of economic problems of operation.

We are of the opinion that the findings of fact of the Commerce Commission on the principal issues are sufficiently specific to meet the requirements of the statute governing such findings. The principal issue involved in the case is whether the removal of switch-lamps has endangered the lives and health of the employees operating this railroad and the public traveling thereon. It is admitted that in operating trains without switch-lights there is always present the danger that some employee has not set a switch for through traffic and locked it, as required by the rules of the railroad, and that, where there is no switch-light to indicate the position of the switch, the engineer and fireman on approaching the same cannot know, until too late to avoid an accident, whether the switch is properly lined to permit their train to proceed over the main track or is set to take the train onto the siding. The fact that at the time of the hearing no accidents had occurred is not of itself proof that the danger does not exist. While it may be said that the findings of the commission concerning the effect of want of switch-lights on the health of the employees of the railroad is a conclusion of the commission, it cannot be said that such conclusion is not based upon sufficient findings of fact or is not supported by competent and substantial evidence. We are of the opinion that the contention of the appellants in this regard cannot be sustained.

The appellants also urge that because the complaint charges the railroad with removing the switch-lamps while the proof shows that they were removed by the receiver there is fatal variance between the allegations of the complaint and the evidence. The appointment of a receiver for the railroad, so far as affects this question, was merely a substitution of such receiver as managing head of the road in place of the officers who had previously operated it. As we have seen, under the Federal statutes and decisions of the Supreme Court of the United States it was the receiver's duty to manage and operate the road in accord-

ance with the requirements of the valid laws of the State when the road was operated. The removal of the lights by the receiver was therefore a removal by the railroad, and there was no variance as contended by the appellants.

We are of the opinion that the record justifies the order of the commission and that the judgment order of the circuit court confirming the same was right. That judgment will therefore be affirmed. *Judgment affirmed.*